UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUWAYNE M. JACKSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>C. PFEIFFER, et al.,<br><br>　　　　　Defendants. | Case No.: 1:21-cv-00452-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION TO DISMISS PURSUANT TO 28 U.S.C. SECTION 1915(e)(2)(A)**<br><br>(Doc. 28)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Duwayne M. Jackson is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.　　RELEVANT BACKGROUND**

Plaintiff filed this action on March 12, 2021. (Doc. 1.) On March 18, 2021, he submitted an Application to Proceed In Forma Pauperis by a Prisoner. (Doc. 6.)

On March 22, 2021, the Court issued its Order Granting Application to Proceed In Forma Pauperis ("IFP") and Order Directing Payment of Inmate Filing Fee by California Department of Corrections. (Doc. 7.)

Following screening, the Court issued its Order Finding Service Appropriate and Directing Service. (Doc. 22.) Following service of process, Defendants Castro, Del-Plair, Morales, Muhammad, Pfeiffer, Pitchford, Rojo and Swanson filed a Motion to Dismiss Under 28 U.S.C. § 1915(e)(2)(A). (Doc. 28.) Plaintiff opposed (Doc. 29) and Defendants replied (Doc. 31).

1     Following substitution of a party—Defendant M. Rauf substituted for Defendant R. Muhammad (Doc. 35)—Defendant Rauf filed a notice of joinder in the pending motion to dismiss. (Doc. 36.)

## II.    LEGAL STANDARDS

    Proceeding "in forma pauperis is a privilege not a right." *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). To aid "in protection of the public against a false or fraudulent invocation of" the IFP statute's benefits, a litigant seeking to proceed without prepaying the filing fee must submit an affidavit under penalty of perjury. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 205 (1993) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 338 (1948)).

    Section 1915(e)(2)(A) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determined that … the allegation of poverty is untrue." However, "[t]o dismiss [a] complaint pursuant to § 1915(e)(2), a showing of bad faith is required, not merely inaccuracy." *Escobedo v. Applebees*, 787 F.3d 1226, 1235 n.8 (9th Cir. 2015).

    "Courts have not been totally uniform in their application of § 1915(e)(2)(A), but a close reading of the cases applying the statute reveals consistent considerations guiding the courts' analyses.... Consistent with [*Escobedo*], other courts have concluded that, where the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice, for example, revoking IFP and provid[ing] a window for the plaintiff to pay the filing fee...." *Witkin v. Lee*, No. 2:17-cv-0232-JAM-EFB P, 2020 WL 2512383, at *3 (E.D. Cal. May 15, 2020) (citing cases), report and recommendation adopted, 2020 WL 4350094 (E.D. Cal. July 29, 2020), appeal dismissed, 2020 WL 8212954 (9th Cir. Dec. 9, 2020).

    "Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP application, and the absence of a showing of bad faith." *Id.*. "On the flip side, courts routinely dismiss with prejudice cases upon finding that the plaintiff has intentionally withheld information

2

that may have disqualified plaintiff from obtaining IFP status or has otherwise manipulated his finances to make it appear that a plaintiff is poorer than he actually is; i.e., where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith." *Id.*; *see Steshenko v. Gayrard*, Nos. 13-CV-03400-LHK, 13-CV-04948-LHK, 2015 WL 1503651, at *5 (N.D. Cal. Apr. 1, 2015) ("Where the applicant has knowingly provided inaccurate information on his or her IFP application, the dismissal may be with prejudice") (citing *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002)); *Attwood v. Singletary*, 105 F.3d 610, 612-13 (11th Cir. 1997); *Romesburg v. Trickey*, 908 F.2d 258, 260 (8th Cir. 1990); *Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir. 1983)), aff'd sub nom. *Steshenko v. Albee*, 691 F. App'x 869 (9th Cir. 2017).

### III. THE PARTIES' POSITIONS

*Defendants' Motion*

Defendants assert the Court should dismiss this action because Plaintiff made an untrue allegation of poverty. (Doc. 28-1 at 2.) They contend had Plaintiff disclosed the settlement proceeds from two separate actions as required, this Court would likely not have granted Plaintiff IFP status. (*Id.*) Specifically, Plaintiff received $5,500 in settlement funds on June 5, 2020, nine months prior to filing this action, and $3,000 in settlement funds on September 3, 2020, six months prior to filing this action. (*Id.*) Defendants state while the funds "initially went to pay various fees," about $2,255 remained thereafter. (*Id.* at 3.) They contend Plaintiff then diverted some of those funds to others and spent money on other purchases. (*Id.*) That diversion, Defendants allege, improperly made Plaintiff eligible for IFP status. (*Id.*) Additionally, immediately after filing suit, Plaintiff "received multiple JPAY deposits into his inmate trust account," totaling about $690. (*Id.* at 4.)

Defendants contend Plaintiff purposefully omitted the settlement funds from his IFP application "solely to avail himself of the privilege of IFP status" and argue that omission "is a patent abuse of the process." (Doc. 28-1 at 4.) Defendants further argue Plaintiff made "various sales purchases following receipt of the settlement funds," totaling about $983 "despite being aware of the allegations giving rise to this suit and his intention to file suit since July 2019, the

3

1  date of the events alleged in this action." (*Id*. at 5.) Further, Defendants assert Plaintiff "continued
2  to immediately spend money deposited into his account after filing suit," or about $577. (*Id.*)
3  Defendants maintain Plaintiff "clearly prioritized" sales purchases over his obligation to the pay
4  the filing fee for this action. (*Id*. at 6.)

***Plaintiff's Opposition***

6  Plaintiff asserts Defendants' allegations he filed a "false affidavit of poverty to secure"
7  IFP status are "not true." (Doc. 29 at 2.) He states he settled two civil actions in "March and April
8  2020, fully a year prior to filing" this action and that "the majority of the proceeds from the two
9  settlements [were] withheld by the CDCR for restitution payments." (*Id.*) Plaintiff asserts "[a]ll
10 other expenditures" from his inmate trust account "were for payments of long standing debts,
11 support for his children and several personal purchases that were made prior to the filing" of the
12 action. (*Id.*) Plaintiff asserts Defendants' motion "is rife with inaccurate accusations of nefarious
13 activity … that is quire frankly, insulting." (*Id.*) Plaintiff asserts the initial $5,500 in settlement
14 funds went to restitution and nearly $1,500 of the $3,000 later settlement funds were used to pay
15 filing fees in four other actions. (*Id*. at 2-3.) Plaintiff states "over the next several months there
16 are miscellaneous withdrawals from his account to a June Benskin and Elvira Avila totaling
17 $150," but Defendants' characterization of those transactions is "highly speculative and
18 irresponsibly put forward when counsel had the Plaintiff's Inmate Trust Statement at the time the
19 motion for dismissal was filed." (*Id*. at 3.)

20  Plaintiff asserts he answered "No" to whether he had any money from "any other sources"
21 because he was actually indigent and the settlement funds "had already been used mainly to pay
22 restitution and other debts." (Doc. 29 at 3.) Further, Plaintiff states when he filed the IFP
23 application "he was employed in the prisons Prison Industry Authority (PIA) and received a
24 regular income," knowing a portion of his income would be deducted to pay the filing fee for this
25 case. (*Id*.) Therefore, his answering "No" to whether he received income from any other source is
26 "nothing more than an oversight due to his actually being indigent at the time he filed the
27 application." (*Id*.) Plaintiff asks the Court to deny Defendants' "motion to dismiss as frivolous
28 and unfounded," and states had Defendants "simply contacted" him and "made inquiries,"

4

1  Defendants "would have been enlightened as to the disposition of those funds and the legitimate
2  purposes they were used for." (*Id*. at 4.) Plaintiff maintains "all of his filing fees, restitution, and
3  other debts have been satisfactorily resolved," and requests this Court deny the motion and that
4  the "case be allowed to move forward to trial." (*Id*.)

***Defendants' Reply to the Opposition***

In reply, Defendants assert Plaintiff's claims that he did not divert funds to impoverish himself before filing suit are untrue. (Doc. 31 at 1.) They argue the record establishes "Plaintiff received $2,255 in settlement funds after all fees were taken out," and that he thereafter diverted $600 to Benskin and Avila, purchased $1,036 in various canteen items shortly before filing suit," and then received $690 in deposits shortly after filing suit. (*Id*. at 1-2) Moreover, Defendants argue Plaintiff's children "are all of majority age" and, in any event, neither Benskin nor Avila are "the listed mothers of the children." (*Id*.) Nor did Plaintiff provide any active child support orders. (*Id*. at 3.)

Defendant contends Plaintiff's canteen purchases, totaling $1,036, "reveal he primarily purchased candy, snacks, and soft drinks," despite his awareness of the allegations giving rise to this action and intention to file suit. (Doc. 31 at 3.) Further, they assert Plaintiff "continued to immediately spend money deposited into his account after filing suit on various candy, snacks, and soft drinks." (*Id*.) Because this Court can consider whether Plaintiff's use of funds was worthwhile, and because Plaintiff prioritized candy, snacks, and soft drinks "over his obligation to pay the filing fee," Defendants ask this Court to dismiss this case was prejudice for Plaintiff's false declaration of indigency. (*Id*. at 3-4.)

### IV.   JUDICIAL NOTICE

A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Here, Defendants request this Court take judicial notice of the following documents, pursuant to Rule 201 of the Federal Rules of Evidence:

//

    Exhibit A-1: The docket from *Jackson v. Paramo, et al.*, case number 3:17-cv-00882-CAB-BLM, in the United States District Court for the Southern District of California

    Exhibit A-2: The Notice of Settlement filed February 27, 2020, in *Jackson v. Paramo, et al.*, case number 3:17-cv-00882-CAB-BLM, in the United States District Court for the Southern District of California

    Exhibit A-3: The Joint Motion to Dismiss filed March 10, 2020, in *Jackson v. Paramo, et al.*, case number 3:17-cv-00882-CAB-BLM, in the United States District Court for the Southern District of California

    Exhibit A-4: the Order Dismissing Case With Prejudice issued March 10, 2020, in *Jackson v. Paramo, et al.*, case number 3:17-cv-00882-CAB-BLM, in the United States District Court for the Southern District of California

    Exhibit B-1: The docket from *Jackson v. Aviles, et al.*, case number 3:18-cv-00060-BAS-BLM, in the United States District Court for the Southern District of California

    Exhibit B-2: The Notice of Settlement filed March 11, 2020, in *Jackson v. Aviles, et al.*, case number 3:18-cv-00060-BAS-BLM, in the United States District Court for the Southern District of California

    Exhibit B-3: The Joint Motion to Dismiss filed April 8, 2020, in *Jackson v. Aviles, et al.*, case number 3:18-cv-00060-BAS-BLM, in the United States District Court for the Southern District of California

    Exhibit B-4: The Order Granting Joint Motion to Dismiss issued April 15, 2020, in *Jackson v. Aviles, et al.*, case number 3:18-cv-00060-BAS-BLM, in the United States District Court for the Southern District of California.

(*See* Doc. 28-2.)

  This Court takes judicial notice of the court records identified above. Fed. R. Evid. 201(b); *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state courts"); *Bias v. Moynihan*, 508 F.3d

1212, 1225 (9th Cir. 2007) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

## V.     DISCUSSION

The Court must determine whether Plaintiff's allegation of poverty was untrue, and if so, whether he acted in bad faith.

In his IFP application, Plaintiff declared he was not currently employed (Doc. 6 at 1) and had not received "any money" from (1) business, profession, or other self-employment, (2) rent payments, interest or dividends, (3) pensions, annuities or life insurance payments, (4) disability or workers compensation payments, (5) gifts or inheritances, and (6) "[a]ny other sources." (*Id*. at 1-2.) Further, Plaintiff declared he did not have any cash, did not own any real estate, stocks, bonds, securities, other financial instruments, automobiles, or other valuable property, or any other assets. (*Id*. at 2.) Lastly, Plaintiff did not identify any persons dependent upon him for support. (*Id*.) The Certificate portion of the application was completed by an authorized officer at Mule Creek State Prison and indicates Plaintiff had "$0" on account as of February 25, 2021, that "during the past six months the applicant's average monthly balance was $882.80" and that "during the past six months the average monthly deposits to the applicant[']s account was $123.73." (*Id*.) A three-page Inmate Statement Report was included and reflects transactions occurring between August 25, 2020 and February 25, 2021. (*Id*. at 3-5.)

### A.  Plaintiff Made Untrue Allegations of Poverty

A review of Plaintiff's IFP application reveals Plaintiff declared he had not received "any money" from "[a]ny other source" within the preceding twelve months. That is not true. Within the previous twelve months, Plaintiff had indeed received money from another source: settlement proceeds from two actions he filed in the Northern District of California totaling $8,500. (*See* Doc. 28-4 at 4-7 [Signed Settlement Agreement in *Jackson v. Aviles*: $3,000] & 9-12 [Signed Settlement Agreement in *Jackson v. Paramo*: $5,500].)

To the extent Plaintiff contends that because the *Jackson v. Aviles* and *Jackson v. Paramo* matters settled "fully a year prior" to his filing suit in this action, he misses the point. The

1  settlement proceeds were disbursed to and received by Plaintiff within the twelve months
2  preceding his IFP application – specifically, approximately eight and six months, respectively,
3  prior to his filing of the IFP application. Thus, Plaintiff was required to disclose those monies.
4  The date or dates the cases settled is not relevant to any determination regarding the date or dates
5  Plaintiff's received the settlement funds.

6  Plaintiff's assertion that he answered "No" to whether he had any money from any other
7  sources because he was actually indigent at that time and the settlement funds "had already been
8  used mainly to pay restitution and other debts" is not well taken. The application does not ask
9  whether Plaintiff had any *remaining* monies received from any other source; rather, the
10 application very plainly asks whether the applicant received monies from the various sources
11 within the previous twelve months. Therefore, when Plaintiff answered that inquiry, his response
12 was untrue.

### B.  Plaintiff Acted in Bad Faith

This record reveals that when Plaintiff's inmate trust account was credited with $5,500 in
settlement proceeds on June 16, 2020—eight months before he filed his IFP application—the
balance before any funds were paid toward Plaintiff's outstanding restitution obligations was
$5,500.01. (*See* Doc. 28-3 at 5.) When payments toward those restitution obligations were made
from those settlement proceeds on that same date, Plaintiff's balance was reduced to $0.01. (*Id*.)
When Plaintiff's inmate trust account was credited with $3,000 in settlement proceeds on
September 3, 2020—five and a half months before he filed his IFP application—the balance
before any funds were paid to any obligation was $3,000.01. (*Id*.) On that same date, following
disbursement of funds owed for outstanding fines or fees, Plaintiff's balance was $2,244.19. (*Id*.)
Thus, within just over six months prior to the instant action, Plaintiff had the ability to pay the
filing fee for this action but failed to disclose receipt of any settlement funds. The Court finds
Plaintiff's failure to disclose those funds to be deceptive. *See Martinez v. Baughman*, No. 1:19-
cv-01457-DAD-JLT (PC), 2021 WL 5921463, at *1-2 (E.D. Cal. Dec. 15, 2021) (recommending
dismissal where plaintiff's IFP application indicated he had not received any money in previous
12 months despite receiving two settlement checks totaling $7,500 and where he diverted funds to

8

1    family before filing suit), recommendations adopted at 2022 WL 4072682; *Witkin*, 2020 WL
2    2512383, at *1-6 (recommending dismissal where plaintiff diverted settlement funds prior to
3    completing his IFP application that indicated he had not received any money from any source),
4    recommendation adopted at 2020 WL 43500094; *Roberts v. Beard*, No. 15cv1044-WQH-RBM,
5    2019 WL 3532183, at *3-12, (S.D. Cal. Aug. 2, 2019) (settlement funds diverted to sister prior to
6    submission of IFP application indicating plaintiff had not received any money from any other
7    sources in the prior twelve months); *see also Cuoco v. U.S. Bureau of Prisons*, 328 F.Supp.2d
8    463, 464-469 (S.D.N.Y. 2004) (dismissing plaintiff's case with prejudice, finding "manipulation
9    of IFP system" regarding settlement checks and related disclosures to the court); *Richmond v.*
10   *Housewright*, 101 F.R.D. 758, 659 (D. Nev. 1984) (dismissal appropriate where plaintiff did not
11   reveal income received during previous 12 months on his IFP application, where the income was
12   paid directly to his fiancée and finding he "deliberately lied").

     Despite characterizing Defendant's motion as inaccurate, insulting, speculative,
14   irresponsible, frivolous and unfounded, Plaintiff largely fails to address, or accurately address,
15   Defendants' arguments. Plaintiff addresses Defendants' contention that a significant sum
16   remained after payment of his various restitution obligations following his receipt of the $3,000 in
17   settlement funds, by asserting "[a]ll other expenditures" from his inmate trust account "were for
18   payments of long standing debts, support for his children and several personal purchases that
19   were made prior to the filing" of the action. Assuming Plaintiff's reference to "long standing
20   debts" refers to the restitution obligations, the Court addresses Plaintiff's contentions concerning
21   "support for his children" and the "several personal purchases that were made."

     The following relevant transactions are recorded between September 16, 2020 (the date of
23   the first transaction after the $3,000 settlement proceeds were deposited and partially disbursed)
24   and March 18, 2021 (the date of Plaintiff's IFP application):
25        Two sales transactions totaling $213.90 dated September 16, 2020
26        Outstanding filing fees totaling $1,483.47 were deducted on October 1, 2020
27        A sales transaction totaling $220.00 on October 6, 2020
28        A voluntary inmate withdrawal to June Benskin for $500.00 on October 7, 2020

|   |   |
|---|---|
| 1 | A sales transaction totaling $196.75 on November 6, 2020 |
| 2 | A sales transaction totaling $23.10 on November 10, 2020 |
| 3 | A sales transaction totaling $21.65 on December 10, 2020 |
| 4 | A sales transaction totaling $99.15 on January 4, 2021 |
| 5 | A voluntary inmate withdrawal to June Benskin for $100.00 on January 12, 2021 |
| 6 | A sales transaction totaling $53.35 on February 1, 2021 |
| 7 | A voluntary inmate withdrawal to Elvira Avila for $50.00 on February 3, 2021 |

(Doc. 28-3 at 6-7.) Therefore, during the relevant period, Plaintiff withdrew a total of $650 from his inmate trust account and sent those funds to June Benskin and Elvira Avila. (*Id*.) Moreover, during the relevant time period, Plaintiff spent a total of approximately $828 on various sales purchases. (*Id*.) Finally, during that same period, JPAY deposits totaling $665 were credited to Plaintiff's inmate trust account. (*Id*.)

Plaintiff fails to support his implied contention that he was obligated to pay support "for his children." As Defendants' information establishes, June Benskin is Plaintiff's sister; she is not his child or the mother of any of his children. (*See* Doc. 31-2.) Additionally, as that same information establishes, Elvira Avila is not identified as Plaintiff's child, nor is she identified as the mother of any of Plaintiff's six children. (*Id*.) Moreover, Plaintiff has not provided any support for his assertion that he was obligated to pay support to either Benskin or Avila. Notably too, Plaintiff did not identify any individual as a person "dependent on [him] for support" in his IFP application. (*See* Doc. 6 at 2.) It is reasonable for this Court to infer from the record before it that Plaintiff's voluntary inmate withdrawals for the benefit of Benskin and Avila, totaling $665, in the months prior to his filing suit were made in an effort to divert funds from his inmate trust account, thus making Plaintiff appear worthy of IFP status.

As concerns Plaintiff's "personal purchases," this Court properly may consider those purchases in determining whether an individual should be granted IFP status. *Olivares v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995) (citation omitted) (courts are entitled to consider plaintiffs' "economic choices about how to spend [their] money" when considering applications to proceed IFP); *see Lumbert v. Illinois Dep't of Corr.*, 827 F.2d 257, 260 (7th Cir. 1987) ("If the

inmate thinks that a more worthwhile use of his funds would be to buy peanuts and candy . . . than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor").

Here, Defendants have provided the Declaration of G. Singh, Prison Canteen Manager at Mule Creek State Prison, as it concerns the sales transactions reflected on Plaintiff's Inmate Statement Report. (Doc. 31-1.) The exhibit in support of the Singh Declaration reveals that, as Defendants assert, Plaintiff's purchases mainly involved snacks, sodas, and candy. (*See* Doc. 31-1 at 4-22.) This record indicates Plaintiff spent significant sums of money on soda, snacks and candy following receipt of the available settlement funds and prior to his filing of the instant action, prioritizing soda, snacks and candy. Given the circumstances here, the Court finds Plaintiff diverted funds in an effort to avoid having to pay the full filing fee for this action. *See, e.g.*, *Thompson v. Allison*, No. 1:22-cv-00848 JLT HBK (PC), 2022 WL 3567208, *1 (E.D. Cal. Aug. 18, 2022) ("Although Plaintiff may wish to prioritize his comfort item purchases from prison vendors over his obligation to pay the filing fee, his preference to save available funds for this purpose does not mandate permission to proceed *in forma pauperis*"); *Foster v. Wallace*, No. 1:19-cv-00987-SAB, 2021 WL 2292774, at *9-10 (E.D. Cal. June 4, 2021) (revoking plaintiff's IFP status after finding plaintiff prioritized personal spending over filing suit and transferred funds out of trust account to avoid paying filing fee).

In the six months prior to the filing of his IFP application, and after receipt of the undisclosed settlement proceeds, Plaintiff received $665 in undisclosed JPAY deposits. Monies provided to Plaintiff via "JPAY" should have been disclosed as "[a]ny other source" income. *See, e.g.*, *Hill v. Lynch*. No. 2:22-cv-0686 AC P, 2023 WL 4187802, at *1-2 (E.D. Cal. June 26, 2023) (plaintiff's trust account statement claiming to have "received no money from any source over the past twelve months was not accurate" where the statement shows "he received hundreds of dollars in deposits to his trust account" via JPAY); *Sloan v. Cisneros*, No. 1:21-cv-0477-EPG (PC), 2021 WL 5240280, at *1 (E.D. Cal. Oct. 7, 2021) ("The Court also notes that Plaintiff was not forthcoming on his application to proceed in forma pauperis. … he conspicuously failed to state whether he received income from '[a]ny other source' in the last twelve months. Based on

11

Plaintiff's trust account statement, in the last six months alone Plaintiff received an economic impact payment as well as funds through JPAY on four separate occasions, with the average deposit from JPAY being $200").

Next, Plaintiff's argument that when he filed the IFP application "he was employed in the prisons Prison Industry Authority (PIA) and received a regular income," knowing a portion of his income would be deducted to pay the filing fee for this case and therefore any missing information was the result of an "oversight," is also not well taken. The Court notes Plaintiff declared he was *not* employed in his IFP application to the Court. (Doc. 6 at 1.)

In sum, on this record, the Court finds Plaintiff made untrue allegations of property and acted in bad faith by diverting otherwise available funds to avoid a financial obligation to the Court. Plaintiff made significant misrepresentations regarding his financial condition. *Escobedo*, 787 F.3d at 1235 n.8; *Witkin*, 2020 WL 2512383, at *3. Therefore, this Court will recommend this action be dismissed with prejudice.

## VI. CONCLUSION AND RECOMMENDATIONS

Accordingly, this Court **HEREBY RECOMMENDS** that:

1. Defendants' Motion to Dismiss Under 28 U.S.C. § 1915(e)(2)(A) (Doc. 28) be GRANTED; and

2. This action be DISMISSED with prejudice and the Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of

//

//

1  rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*
2  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

3  IT IS SO ORDERED.

4  Dated:   **February 8, 2024**                    _____
5                                                                UNITED STATES MAGISTRATE JUDGE